### 12227. THOMASSON *v.* HORTON.

LUKE, J. 1. Where it is provided in a contract of rental that by a named date each month a sum stated shall be paid by the lessee to the lessor, and no place of payment is fixed by the contract, the lessee must take the payment to the lessor, but where there is an oral agreement between the lessee and the lessor that the lessor shall come to the place of business of the lessee and collect such sum at the time stated for payment, and this agreement is carried out by the lessor for several months, and he subsequently fails to come for the payment on the last day upon which the payment may be made, as he had previously done and agreed to do, a tender by the lessee on the next day after the lessor failed or refused to call for the payment may not be rejected and the contract of rental declared terminated upon the ground of it's non-performance by the lessee. To hold otherwise would be to give the lessor an opportunity, by his own conduct and wrong, to gain an unconscionable advantage.

(*a*) There being no place fixed by the terms of the contract at which payment was to be made, a subsequent oral agreement that payment should be made at the place of business of the lessee did not vary the terms of the written contract.

2. The evidence in this case fully authorized the verdict for the defendant; there was no error in the admission of testimony, nor is the charge of the court subject to the criticism urged against it. For no reason assigned was it error to overrule the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED MAY 11, 1921.

Eviction; from Carroll superior court — Judge Terrell. December 27, 1921.

J. J. Thomasson, who sought to evict Horton as a tenant holding over and beyond the term of his lease, had purchased the prem-

ises from the lessor and was transferee of the lease, which was for a term of fifty-two months, commencing May 1, 1918. The lease was transferred to Thomasson on July 7, 1919. It provides for the payment of a stated sum as rent on the last day of each month, and that if the lessee fails to pay this sum promptly when due, the lessor " has the right and option to declare this lease and contract void if not received in ten days, cancel the same, and take possession of the premises." The plaintiff testified that the leased premises, a store, was on his route between his home and his place of business, and in the months of August and September, following the July in which the lease was transferred to him, the defendant, before the 10th day of the month, stopped him when he was passing the store and asked him to send for the rent, he sent his son for it, and it was paid; that in October his son was asked by the defendant on the 10th to call for the rent and it was paid; that the defendant gave no notice in regard to the rent due on or before the 10th of November, and consequently he did not send for it, and on the 11th he sent to the defendant a notice canceling the contract, and in response the rent was brought to him on the 12th.

The defendant testified that the plaintiff, after purchasing the rented premises, proposed to take the lease off his hands, and told him that on the expiration of the lease he would have to move; also: " I told him it was the custom of Dr. Hamrick [the lessor] to send over for the rent, and I would be glad if he would do the same thing — more convenient for me. He said he would do that. . . I told him the rent would be ready any time he would come around for it. . . From that time on . . the checks were always sent for. . . I never sent him a check; they were always ready for him within the time, up to this time. When he promised to send by and get the rent I never for a moment thought that he wouldn't do it. . . I got this notice when he claimed that I slipped by for the rent. I had been ready and this check was ready to pay him for the month's rent. . . I was expecting him to come by for it. . . I think may be once or twice I called attention to it, so that he could get the check, .. . but that time he didn't send and I just didn't see him to remind him at that time, but the check was ready for him if he had come for it. . .

There was no writing covering this agreement [to "come by for the rent"]; just a plain man to man word conversation."

In the motion for a new trial it was alleged that the court erred in admitting the defendant's testimony as to the plaintiff's agreement to send for the rent, the defendant objecting to this testimony on the grounds that it varied the terms of the written contract, was without consideration, did not amount to a novation, and was irrelevant.

The court charged the jury: "The defendant insists that subsequent to the execution of this lease and its transfer to J. J. Thomasson he had an agreement with the transferee, Mr. Thomasson, . . whereby Mr. Thomasson would call at his store, the defendant's place of business, and there collect or receive the rent when due. I charge you that if this be true, . . if it be true that Mr. Thomasson did agree to call at Mr. Horton's place of business and receive and collect the rent past due or when due, his failure to call and demand such rent when agreed to, if he did agree to it, would not inure to the damage or detriment of the defendant; and if that be true the plaintiff would not now be heard to plead the default of the defendant. . . If he did not have such an agreement, it would not be incumbent upon Mr. Thomasson to call at the place of business of Mr. Horton; it would be incumbent upon Mr. Horton to see that the rent was promptly paid to the plaintiff when due." It is contended that the court erred in charging as to the alleged agreement as above.

*Smith & Smith, J. T. Thomasson, M. U. Mooty,* for plaintiff.
*R. D. Jackson & Son,* for defendant.